IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

STATE OF WASHINGTON, )
                                       )        No. 36998-6-III
                   Respondent,         )
                                       )
        v.                             )        UNPUBLISHED OPINION
                                       )
TRAVIS M. LANG,                        )
                                       )
                   Appellant.          )

FEARING, J. — Travis Lang, an offender who committed a crime as a juvenile,

asked the superior court to reduce his sentence based on *State v. Houston-Sconiers*, 188

Wn.2d 1, 391 P.3d 409 (2017). At resentencing, the superior court reduced his sentence

by forty months. On appeal, Lang seeks further reduction of his sentence. He contends

that the superior court failed to seriously consider his youthfulness, at the time of his

offense, during resentencing. He contends the trial court erroneously failed to consider

an exceptional downward sentence and running his deadly weapon enhancement

concurrently with his base murder sentence. Finally, he argues that his resentencing

counsel ineffectively represented him when stipulating to an offender score of one.

We do not address Travis Lang's first three assignments of error. Instead, we rule

that Travis Lang's resentencing counsel ineffectively represented Lang during the

resentencing. We remand for the trial court to reconsider Lang's offender score and for further proceedings consistent with any recalculation of the offender score. On remand, Lang may assert, before the resentencing court, the other contentions he forwards in this appeal. We deny Lang's request for resentencing before another superior court judge.

FACTS

This appeal concerns sentencing of Travis Lang for a murder committed at age 16. Travis Lang was born in Spokane on January 18, 1986. By the age of sixteen, Travis Lang socialized with older teenagers and was typically the youngest of his clique.

Two crimes preceded the murder committed by Travis Lang. On February 3, 2002, while watching the Super Bowl, Lang and his friends decided to rob someone. According to Lang, he served as the look-out. The group purloined beer from a house's back porch, entered the residence, and stole firearms and other property from inside the home.

The juvenile court adjudicated Travis Lang guilty of residential burglary and first degree theft for his misconduct on February 3, 2002. According to Lang, he received a deferred sentence for the crimes. Lang spent two days in detention and two months on house arrest.

Travis Lang's friend, Jason Means, dealt marijuana from Means' Spokane apartment. On November 14, 2002, sixteen-year-old Lang and eighteen-year-old Means shared a heated exchange, in Means' apartment, over Lang's $200 drug debt to Means.

An altercation ensued, during which Lang stabbed Means in the chest, back, head, and neck, causing his death. On November 14, Lang remained on probation for the February 2002 crimes.

After killing Jason Means, Travis Lang seized some of Means' money and marijuana before leaving Means' apartment. Law enforcement found blood in Means' bedroom and bathroom and concluded that Lang attempted to clean himself and change his clothing after the slaying. Lang told law enforcement that, before the killing, he had stayed awake for two days while using crack cocaine and methamphetamine.

On December 5, 2002, the State of Washington charged Travis Lang, in adult court, with one count of first degree murder with a deadly weapon. On August 11, 2003, Lang entered a guilty plea to the charge.

Pursuant to a plea agreement, the State recommended a mid-range sentence of 290 months' confinement plus a 24-month deadly weapon enhancement. The sentencing court calculated Travis Lang's offender score at one point, attributing 1/2 point to each of Lang's two earlier offenses. The court's calculation resulted in a standard range sentence of 250-333 months. The trial court imposed the recommended sentence of 314 months' confinement, which ran the enhancement consecutively with the base sentence. The sentencing court found that Lang's chemical dependency contributed to the offense.

PROCEDURE

On December 26, 2017, fifteen years after the murder, Travis Lang filed, in the

3

superior court, a CrR 7.8 motion for relief from his judgment and for resentencing based on changes in the law of juvenile sentencing. Lang argued that, pursuant to *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012) and *State v. Houston-Sconiers*, 188 Wn.2d 1 (2017), sentencing courts must consider mitigating qualities of youth when sentencing juveniles and the sentencing court, in 2003, failed to consider his immaturity. He asked that, on resentencing, the superior court reduce his sentence below the standard range and run his deadly weapon enhancement concurrent with his base sentence for murder.

As part of his CrR 7.8 motion, Travis Lang submitted a presentence report that recommended a reduced, exceptional mitigated sentence of 216 months' confinement. In turn, by order of the resentencing court, the Department of Corrections (DOC) filed a presentencing investigation report (PSI). DOC recommended that the court decline to modify Lang' sentence. Because of their lack of relevance to Lang's offender score, we do not outline the facts found in the two reports.

On March 29, 2019, Judge Annette Plese, who did not sentence Travis Lang in 2003, conducted the resentencing hearing. We will refer to Judge Plese hereafter as the resentencing court. Because Lang requests removal for Judge Plese from any resentencing on remand, we detail the comments made and rulings issued by her.

The resentencing court first addressed Travis Lang's offender score, previously calculated at one point. For the first time, Lang argued, at the resentencing hearing, that

4

his two prior juvenile offenses for residential burglary and first degree theft should be

deemed the same criminal conduct and thus scored as one crime. Lang maintained that

his offender score should be zero points, a score rounded down from one-half a point.

The State responded that, due to the burglary antimerger statute, Travis Lang's burglary

and theft offenses could not merge. Thus, according to the State, Lang's offender score

should remain calculated at one point, one-half point for each juvenile crime.

The resentencing court asked whether defense counsel reviewed the antimerger

statute. Defense counsel did not directly answer this question and instead summarized

her earlier argument. The resentencing court commented that the original sentencing

court did not count Lang's prior offenses as the same criminal conduct. The court asked

for additional briefing on the offender score

During a short recess, defense counsel consulted with a cocounsel regarding the

offender score. After the break, defense counsel commented before the court:

> In talking with Mr. Ellis [co-counsel], *the one-half and one-half should go properly forward as a one*, and they merged at the time for sentencing because they were the same course of conduct, *but as points, they're half and half, so.*

Report of Proceedings (RP) at 9 (emphasis added). The resentencing court responded:

> Okay. So we're in the same range as far as at sentencing to the 250 to 333 months with the 24 months enhancement, maximum life, $50,000. So I just want to make sure we're all in the same range.

RP at 9. The court accepted defense counsel's stipulation that Travis Lang's offender

5

score should be calculated at one point.

The resentencing court next addressed whether it should impose an exceptional mitigated sentence. The State contended that Travis Lang's 314-month sentence should remain unchanged. Lang requested an exceptional mitigated sentence of 216 months' confinement. He also asked that the 24-month deadly weapon enhancement run concurrently with the base sentence.

The resentencing court remarked that, under current statutes, the court lacked authority to run the deadly weapon enhancement concurrently with the base sentence and, thus, the enhancement must run consecutively. Defense counsel responded:

> The Court has the discretion to run it consecutive [sic]—to run it consecutive [sic], which is what we're asking the Court to do.

RP at 29. Presumably defense counsel meant to say that the court had the discretion to run the enhancement concurrently, not consecutively. The resentencing court continued:

> If the Court ran it concurrent with the current sentence, the Court would have to make very specific findings under the mitigation statute different from the *Miller* [*v. Alabama*, 567 U.S. 460 (2012)] factors.

RP at 29.

During the resentencing hearing, the court remarked that it reviewed DOC's PSI report, which covered Travis Lang's history. The court acknowledged that the *Miller* factors should be considered when sentencing a juvenile. The court highlighted that Lang committed the crime at sixteen years old and that his psychological evaluation indicated

6

that Lang's development at the time was that of a thirteen- or fourteen-year-old. The

court affirmed:

> That's exactly what the *Miller* court says that this Court needs to look at in sentencing the juvenile. The factors of risk, drug use, as the attorney mentioned, lack of sleep, rehab, all those things that would have affected someone who's 21 versus someone who's that.
> At 16, you're considered an adult. That's why he went straight to adult court, but looking at that psychological report saying he was more functioning mentally as a 13 or 14 year old does factor right into those.

RP at 38. The resentencing court remarked that, at the time of the murder, Lang

remained on probation for the earlier burglary. The court applauded Lang for taking

responsibility for his crime by pleading guilty.

The resentencing court commented about an exceptional downward sentence:

> Are there mitigating factors in running them concurrent? I can't find mitigating factors to go below the standard range, but I do find mitigating factors based on the developmental delays that they noted at the time.

RP at 39-40. The court continued:

> So do I think that you should have gotten the low end versus a midrange? Yes, I would agree based on the factors that I have in front of me and the lack of sophistication since they specifically talk about your brain being somewhere around 13 or 14. You add the drug use into it and all of the other ranges, and the fact, though, that you pled straight up, came in and admitted that, all of that, looking that the attorney tried to get you the best deal, but you came in and admitted it. That was a huge step.

RP at 40.

The resentencing court concluded that the *Miller* factors supported a low-end

standard range sentence. The court imposed a sentence of 250 months' confinement, plus

24 months for the deadly weapon enhancement, totaling 274 months' confinement. The court thereby shortened Travis Lang's sentence by 40 months.

Defense counsel then inquired whether the resentencing court would allow for additional briefing on running the deadly weapon enhancement concurrently. The resentencing court responded:

It would be a reconsideration only, and you could do a reconsideration, but you would have to *specifically hit the mitigation factors under the statute for consecutive time and not so much the* Miller *factors. I was focusing more on the statutory factors*.

RP at 41 (emphasis added). Later, defense counsel reasserted that the resentencing court had authority "to run a deadly weapon enhancement concurrent." RP at 44. The court replied that counsel would need to perform briefing to change the court's mind. The court informed defense counsel that, in briefing, she could also address whether the twenty-year mandatory minimum sentence applied to juvenile offenders.

Travis Lang filed a postsentence memorandum of law that argued that the resentencing court held the discretion to sentence below the mandatory twenty-year minimum sentence and to run the deadly weapon enhancement concurrently with the base sentence without finding the presence of statutory mitigating factors. The resentencing court treated Travis Lang's post-sentence memo as a motion for reconsideration. In response, the court wrote an opinion addressing Lang's arguments. The opinion readdressed the *Miller* factors and the court's reasoning for issuing a low-end standard

range sentence. The court reiterated Lang's physical age of sixteen and highlighted his

mental age of thirteen or fourteen at the time he committed the crime.

In its post-sentencing opinion, the resentencing court wrote:

> Under the *Miller v. Alabama* case, prior to imposing sentence on a
> juvenile for serious or violent crimes as an adult, the Court must consider
> any mitigating factors that would give the court the discretion to impose a
> sentence below the otherwise applicable [Sentencing Reform Act of 1981,
> chapter 9.94A RCW] SRA range and/or sentencing enhancements.

Clerk's Papers (CP) at 122.

The court's opinion addressed the two issues defense counsel raised: the twenty-

year mandatory minimum and running the deadly weapon enhancement concurrently

with the base sentence:

> The Court did not agree to waive the 20 years minimum mandatory
> on the 1st Murder charge or run the 24 consecutive months for the deadly
> weapon enhancement concurrent based on aggravating factors.

CP at 123.

The resentencing court observed that Travis Lang remained on probation when he

murdered Jason Means. The opinion addressed Lang's probation for his past two

juvenile offenses and his behavior during this time:

> He spent two days in juvenile detention and 2 months on house
> arrest. Lang was still on felony probation at the time of this murder. . . .
> Lang was ordered not to consume controlled substances, yet he was clearly
> violating this condition prior to this arrest. It is clear from the report that
> *his arrest, conviction and incarceration had little impact on him and his*
> *behavior once released from house arrest. There was no information that*
> *he had any violations during his 60 days of house arrest. This*

> *demonstrated to this court that he had the ability to scale back his*
> *impulsive nature when it was necessary.*

CP at 124 (emphasis added). The opinion continued:

> In reviewing these factors and the crime involved in this case which
> include stabbing his friend to death, engaging in the drug culture and
> hanging with others negative influences shortly after being released from
> house arrest for previous felonies. *This demonstrates both an immaturity*
> *level and a sophistication level as he was capable of compliance during his*
> *house arrest but after his release he believed he could do what he wanted.*

CP at 125 (emphasis added).

The resentencing court's opinion included findings of fact. One finding

underscored that Travis Lang was the only participant in the murder, encountered a

chaotic childhood, and mingled with older kids. Travis Lang challenges two findings of

fact, all unnumbered, that read:

> It is clear from the report that *his arrest, conviction and*
> *incarceration had little impact on him and his behavior once released from*
> *house arrest. There was no information that he had any violations during*
> *his 60 days of house arrest. This demonstrated to this court that he had the*
> *ability to scale back his impulsive nature when it was necessary.*

CP at 124 (emphasis added).

> In reviewing these factors and the crime involved in this case which
> include stabbing his friend to death, engaging in the drug culture and
> hanging with others negative influences shortly after being released from
> house arrest for previous felonies. *This demonstrates both an immaturity*
> *level and a sophistication level as he was capable of compliance during his*
> *house arrest but after his release he believed he could do what he wanted.*
> . . . .
> [T]he horrific attack and murder of someone he called a friend *is a*
> *huge aggravating factor.*

CP at 125 (emphasis added).

The resentencing court concluded that no factors justified an exceptional mitigated sentence below the bottom of the standard range. The court denied Travis Lang's motion for reconsideration and upheld its original 274-month sentence.

## LAW AND ANALYSIS

We first address whether Travis Lang's two earlier crimes of residential burglary and theft constituted the same criminal conduct, and, in turn, whether his offender score should have been zero rather than one when sentenced for murder. We next examine whether resentencing counsel ineffectively represented Lang when agreeing to an offender score of one. Finally, we evaluate whether to reassign the resentencing on remand to another superior court judge.

### Same Criminal Conduct Analysis

Travis Lang asserts that the resentencing court miscalculated his offender score as one point, because the court failed to perform a same criminal conduct analysis for his two prior juvenile offenses: residential burglary and first degree theft. Lang argues that employment of the analysis would have led to a finding that the two crimes entailed the same victim, time, place, and intent. Thus, his offender score would have been calculated at zero points.

11

The State responds that Travis Lang invited any resentencing court error when defense counsel agreed with the State's proposition that the burglary antimerger statute controlled Lang's calculation. Additionally, the State contends that the sparse record does not permit adjudication of Lang's claim of same criminal conduct. The State argues that, if evidence exists to support Lang's contention, he must present the assignment of error via personal restraint petition.

Travis Lang replies that defense counsel did not agree with the State's position at resentencing regarding the burglary antimerger statute, but rather the resentencing court summarily adopted the State's argument. Lang highlights that, while defense counsel stated that his offender score should "properly go forward as a one" point, defense counsel maintained the position that his two prior offenses "were the same course of conduct." RP at 9. Thus, according to Lang, the invited error doctrine does not apply. Lang contends that defendants may waive factual errors at sentencing, but not legal errors and the miscalculation of his offender score constituted legal error.

Pursuant to the SRA, a standard range sentence is determined by an offender score and offense seriousness level. RCW 9.94A.510; RCW 9.94A.530(1). An offender score is the sum of points an offender accrued from prior convictions rounded down to the nearest whole number. RCW 9.94A.525. Prior class A, B, and C felony convictions and certain prior gross misdemeanor convictions are included in the offender score. RCW 9.94A.525(2)(a)-(g). The State bears the burden of proving the existence of prior

12

convictions by a preponderance of the evidence. *State v. Bergstrom*, 162 Wn.2d 87, 93, 169 P.3d 816 (2007). In determining the proper offender score, the court may rely only on information that the defendant admits in the plea agreement, the defendant admits or acknowledges at sentencing, or the State proves at the time of sentencing. RCW 9.94A.530(2); *State v. Hunley*, 175 Wn.2d 901, 909, 287 P.3d 584 (2012).

On appeal, both parties agree that the application of the antimerger statute at resentencing was erroneous. In *State v. Williams*, 181 Wn.2d 795, 801, 336 P.3d 1152 (2014), our high court held that the burglary anti-merger statute does not supersede the SRA's more recent directive, in RCW 9.94A.525(5)(a)(i)), that prior convictions encompassing the same criminal conduct shall be counted as one offense. Thus, a same criminal conduct analysis should have been conducted at resentencing.

If two crimes entail the "same criminal conduct" within the meaning of the SRA, the sentencing court scores the two crimes as one. "Same criminal conduct" refers to when two or more crimes involve (1) the same criminal intent, (2) the same time and place, and (3) the same victim. RCW 9.94A.589(1)(a); *State v. Saunders*, 120 Wn. App. 800, 824, 86 P.3d 232 (2004). Intent, in this context, is not the particular *mens rea* element of the particular crime, but rather is the offender's objective criminal purpose in committing the crime. *State v. Phuong*, 174 Wn. App. 494, 546, 299 P.3d 37 (2013). If one crime furthered another and the time and place of the crimes remained the same, the defendant's criminal purpose or intent did not change and the offenses encompass the

same criminal conduct. *State v. Lessley*, 118 Wn.2d 773, 777, 827 P.2d 996 (1992). The defendant bears the burden of showing that his or her crimes constitute the same criminal conduct. *State v. Graciano*, 176 Wn.2d 531, 540, 295 P.3d 219 (2013).

RCW 9A.52.025 governs the crime of residential burglary. The statute declares:

> (1) A person is guilty of residential burglary if, with intent to commit a crime against a person or property therein, the person enters or remains unlawfully in a dwelling other than a vehicle.

Former RCW 9A.56.030 governed first degree theft at the time Travis Lang committed the offense. LAWS OF 1995, ch. 129, § 11. The former statute provided:

> (1) A person is guilty of theft in the first degree if he or she commits theft of:
> (a) Property or services which exceed(s) one thousand five hundred dollars in value other than a firearm as defined in RCW 9.41.010; or
> (b) Property of any value other than a firearm as defined in RCW 9.41.010 taken from the person of another.

Former RCW 9A.56.030 (LAWS OF 1995, ch. 129, § 11).

Travis Lang's PSI report details some facts of Travis Lang's prior offenses of residential burglary and first degree theft. Lang committed the offenses on February 3, 2002. While watching the 2002 Football Super Bowl, pitting the St. Louis Rams against the New England Patriots, he and his friends decided to rob someone. The group stole beer from a house's back porch, entered the residence, and stole firearms and other property from inside the home.

14

As Travis Lang argues, both crimes occurred at the same time and place, the dwelling from which Lang and his friends stole property on the day of the 2002 Super Bowl. Lang asserts that he victimized the same individual while committing both crimes, the person who owned the residential dwelling Lang entered and from whom he stole property. We conclude that Lang probably victimized the same person or persons during both crimes. The record does not indicate, however, for certainty the identities of the victim or victims. Nonetheless, the State, however, does not contradict that the victims remained the same. Finally, both of Lang's offenses involved the same intent or criminal objective. He objectively intended to take property from another. He accomplished this purpose by entering another person's dwelling to take property from within. The burglary furthered the theft.

The State contends that Travis Lang bases his description of the crime on speculation and assumption that the limited record contradicts. The State maintains that, based on Lang's statement, he and his friends decided to "go out and *rob* someone." CP at 81 (emphasis added). Thus, according to the State, Lang intended to commit robbery, not burglary. The State theorizes that Lang could have entered the dwelling in search of a specific victim, found nobody, and then decided to steal the homeowner's firearms and other property rather than rob a victim.

We conclude that the State's, not Travis Lang's, factual narratives constitute speculation. The State did not at sentencing, nor does it now, dispute the accuracy of the

15

PSI's facts regarding Travis Lang's prior offenses. The State cites no authority holding that a same criminal conduct analysis may not be conducted based on facts contained in a PSI. Although Lang stated the group first decided to "rob" someone, he was not convicted of robbery, but rather of burglary and theft. Moreover, the term "rob" is often used in nonlegal terms to describe what is legally known as a theft.

In a footnote, the State argues that any offender score miscalculation favored Travis Lang. The State reasons that, because Lang was serving community supervision at the time of the murder, he should have received one point toward his offender score. Thus, Lang was not prejudiced by any error of defense counsel. Lang responds that the State's argument should not be considered, because it inserts the contention in a footnote. Even if this court were to consider it, however, Lang maintains that the State fails to recognize that "community supervision" under the Juvenile Justice Act does not equate to "community placement" under the SRA.

In *State v. N.E.*, 70 Wn. App. 602, 606 n.3, 854 P.2d 672 (1993), this court refused to address N.E.'s argument because N.E. raised the argument in a footnote. In *State v. Johnson*, 69 Wn. App. 189, 194 n.4, 847 P.2d 960 (1993), this court also declined to address an issue asserted in a footnote. We follow *State v. N.E.* and *State v. Johnson* and decline to entertain the State's assertion.

Invited Error

The State requests that this court apply the invited error doctrine and decline to entertain Travis Lang's contention that his two earlier convictions constitute the same criminal conduct. The invited error rule precludes a party from creating an error at trial and then challenging that same error on appeal. *In re Personal Restraint of Coggin*, 182 Wn.2d 115, 119, 340 P.3d 810 (2014). The doctrine bars a criminal defendant's challenge even when the alleged error involves constitutional rights. *State v. Mullen*, 186 Wn. App. 321, 326, 345 P.3d 26 (2015), *abrogated on other grounds by State v. Wu*, 194 Wn.2d 880, 453 P.3d 475 (2019). In determining whether the invited error doctrine applies, courts have "considered whether a defendant affirmatively assented to the error, materially contributed to it, or benefitted from it." *State v. Momah*, 167 Wn.2d 140, 154, 217 P.3d 321 (2009). When a sentence is contrary to law, the accused may challenge that sentence for the first time on appeal on the basis that it is contrary to the law, but not if the accused invited the error. *State v. Anderson*, 92 Wn. App. 54, 61, 960 P.2d 975 (1998).

At sentencing, defense counsel initially argued that Travis Lang's prior juvenile offenses for burglary and theft constituted the same criminal conduct. The State argued that the antimerger statute prohibited the merger of Lang's burglary and theft offenses and thus Lang's offender score should remain at one point, not zero. During a short

17

recess, defense counsel consulted with cocounsel regarding the offender score issue.

After the break, she stated to the court that, after speaking with cocounsel:

> In talking with Mr. Ellis [cocounsel], *the one-half and one-half should go properly forward as a one*, and they merged at the time for sentencing because they were the *same course of conduct, but as points, they're half and half, so.*

RP at 9 (emphasis added). The resentencing court deemed defense counsel's confusing comments as a stipulation that Lang's offender score should be calculated at one point, resulting in a standard range of 250-333 months. The court's understanding of counsel's remarks is reasonable.

We disagree with Travis Lang that defense counsel did not accept the State's antimerger argument at resentencing. Defense counsel concluded that both of Lang's prior offenses constituted "the same course of conduct." RP at 9. Nevertheless, she stipulated that Lang's offender score should be calculated at one point. Defense counsel's stipulation invited the resentencing court's error in not performing a same criminal conduct analysis. But for the stipulation, the resentencing court would have performed the analysis.

Travis Lang contends that he cannot waive a legal error at sentencing. A challenge to a legal error cannot be waived, because a defendant cannot empower a sentencing court to exceed its statutory authorization. *State v. Wilson*, 170 Wn.2d 682,

18

689, 244 P.3d 900 (2010). Nevertheless, the invited error doctrine operates distinctly from waiver.

Ineffective Assistance of Counsel

To avoid the invited error doctrine, Travis Lang astutely asserts that resentencing defense counsel provided ineffective assistance by stipulating to calculating Lang's offender score at one, when it should have been calculated at zero. The invited error doctrine does not bar review of a claim of ineffective assistance of counsel. *State v. Doogan*, 82 Wn. App. 185, 188, 917 P.2d 155 (1996).

The federal and state constitution's guarantee effective assistance of counsel. U.S. CONST. amend. VI; WASH. CONST. art. I § 22; *Strickland v. Washington*, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Thomas*, 109 Wn.2d 222, 229, 743 P2d 816 (1987). The right to assistance of counsel attaches to every "critical stage" of the proceeding. *State v. Everybodytalksabout*, 161 Wn.2d 702, 708, 166 P.3d 693 (2007). A claim of ineffective assistance of counsel presents an issue of constitutional magnitude that may be considered for the first time on appeal. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

To prevail on claim of ineffective assistance of counsel, an accused must show (1) that defense counsel performed deficiently and (2) the deficient representation prejudiced the defendant. *State v. Estes*, 193 Wn. App. 479, 488, 372 P.3d 163 (2016), *aff'd*, 188 Wn.2d 450, 395 P.3d 1045 (2017). Counsel performed deficiently if, after considering all

19

the circumstances, the performance falls below an objective standard of reasonableness. *State v. Estes*, 193 Wn. App. 479, 488 (2016). Prejudice exists on a reasonable probability that, except for counsel's errors, the result of the proceeding would have probably differed. *State v. Estes*, 193 Wn. App. at 488.

The law carries a strong presumption that defense counsel met the standard of care. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). Criminal defendants may rebut the presumption of reasonable performance by demonstrating that no conceivable legitimate tactic excuses counsel's performance. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). Reasonable attorney conduct includes a duty to investigate the relevant law. *State v. Woods*, 138 Wn. App. 191, 197, 156 P.3d 309 (2007).

Travis Lang's trial counsel committed legal error when concluding that Lang's prior two offenses constituted the same criminal conduct, but should nevertheless be scored as one. We expect counsel to be acquainted with recent decisions. In 2014, before the 2019 resentencing, the Washington Supreme Court ruled, in *State v. Williams*, 181 Wn.2d 795 (2014), that the burglary anti-merger statute did not supersede the SRA's more recent directive, in RCW 9.94A.525(5)(a)(i)), that prior convictions encompassing the same criminal conduct shall be counted as one offense.

As elucidated above, Travis Lang's prior offenses were probably the same criminal conduct and should have been counted as one offense, yielding an offender score

of zero. The resentencing record shows no reason why defense counsel stipulated to an incorrect offender score other than counsel's mistaken agreement with the State's attorney that the burglary antimerger statute prohibited the two offenses merging and being the same criminal conduct. Counsel's concession to the offender score of one fell below an objective standard of reasonableness.

Resentencing defense counsel's conduct prejudiced Lang. If not for counsel's stipulation to his offender score, the resentencing court would have conducted a same criminal conduct analysis and probably calculated Lang's offender score at zero. We now remand to the resentencing court to perform that analysis and make that final determination of same criminal conduct.

Resentencing Judge

Travis Lang asserts that the appearance of fairness doctrine warrants reassigning his resentencing to a new superior court judge. We disagree.

The federal and state constitutions guarantee a criminal defendant's right to be tried and sentenced by an impartial court. U.S. CONST. amends. VI, XIV; WASH. CONST. art. I, § 22; *State v. Solis-Diaz*, 187 Wn.2d 535, 539, 387 P.3d 703 (2017). The law requires more than an impartial judge; it requires that the judge also appear to be impartial, pursuant to the appearance of fairness doctrine. *State v. Solis-Diaz*, 187 Wn.2d at 540. A judicial proceeding is valid if a reasonably prudent, disinterested observer would conclude that the parties received a fair, impartial, and neutral hearing. *State v.*

21

*Solis-Diaz*, 187 Wn.2d at 540. The party asserting a violation of the appearance of fairness must show a judge's actual or potential bias. *State v. Solis-Diaz*, 187 Wn.2d at 540. In determining a judge's impartiality, this court uses an objective test that assumes a reasonable observer knows and understands all the relevant facts. *State v. Solis-Diaz*, 187 Wn.2d at 540.

The party challenging the trial judge's appearance of fairness may seek reassignment for the first time on appeal, because, if the appellate court remands for new sentencing, the trial judge will exercise discretion regarding the very issue that triggered the appeal. *State v. Solis-Diaz*, 187 Wn.2d at 540. Nevertheless, reassignment is generally unavailable as an appellate remedy. *State v. McEnroe*, 181 Wn.2d 375, 387, 333 P.3d 402 (2014).

The resentencing court performed exemplarily when resentencing Travis Lang. She followed the rules and even changed her mind when given additional briefing about concurrent sentences. She wanted to apply a correct offender score and thus questioned defense counsel about the score. The resentencing court significantly lowered Lang's sentence. Nothing in the superior court's ruling suggests any bias against Lang.

## CONCLUSION

We remand to the superior court for resentencing. We direct the resentencing court to perform the same criminal conduct analysis with the two earlier crimes. Travis

No. 36998-6-III
*State v. Lang*

Lang may also forward, at the time of resentencing, the other arguments he raises on appeal.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:


_____
Lawrence-Berrey, J.

_____
Pennell, C.J.